[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
1. This matter was commenced by the petitioner in September, 1991, to establish paternity and child support for the minor child, Brandon Josephs, born June 20, 1991.
2. The paternity petition was drafted by petitioner pro se; filed by her on September 5, 1991; amended by agreement of the parties on September 26, 1991; dismissed for failure to prosecute CT Page 10923 on December 11, 1992; restored to the docket on April 29, 1993; and further amended without objection in June, 1993.
3. On September 2, 1993, the Court (Thim, J) found the respondent to be the father of Brandon Josephs and a judgment of paternity so entered. The Court reserved decision on financial orders until a later date.
4. Thereafter, petitioner, through her counsel, served on defendant interrogatories and requests for production and inspection of records; a Motion for Contempt for failure to comply with said requests; and Motions to Compel said production. Orders were entered on several occasions.
5. Petitioner also served subpoena and notice of deposition on respondent's parents alleging their involvement with respondent's finances. Respondent's attorney filed motions to quash same.
6. On May 12, 1994, respondent's attorney filed a Notice of Stay alleging that the issue of child support should be stayed during the pendency of respondent's bankruptcy petition.
7. Petitioner testified that at that point she ceased all efforts to establish and collect child support, feeling that it was futile.
8. The bankruptcy petition was pending form April, 1994 until December, 1995.
9. In March, 1997, the state filed a Support Petition on petitioner's behalf. The petitioner appeared on June 4, 1997, and the matter was continued to June 25, 1997, at the request of defendant. The matter was further continued to July 30, 1997, August 27, 1997, September 24, 1997, November 12, 1997, December 17, 1997, and January 28, 1998. On January 28, 1998, both parties appeared and a temporary order of $75.00 per week as and for current support was entered. The matter was then continued to March 11, 1998, to allow the assistant attorney general time to review financial documentation provided by respondent. The matter was then continued to April 8, 1998, May 5, 1998, May 6, 1998, and May 20, 1998. The parties and their respective attorneys appeared on May 20, 1998; a hearing was held; both parties and witnesses testified; and exhibits were accepted into evidence. CT Page 10924
10. Respondent testified that his current income is approximately $200 per week. He earns said sum by collecting the rents in a building owned by his father in which there are ten residential units and two retail units. Respondent claims that he spends anywhere from 20 hours to 40 hours per week collecting the eleven monthly rents from the current tenants. Respondent has been managing this property for approximately one year. Coincidentally, that is the time period that this support petition has been pending.
11. Defendant testified that he is a licensed real estate broker. Prior to his current occupation, respondent owned and operated a restaurant for six years, owned a retail business for the purchase and sale of specialty automobiles, and owned and managed several rental buildings and properties. Respondent described himself as "a jack of all trades".
12. Respondent testified that he lives with his mother and father and that he pays them no rent. The only living expenses that respondent lists on his financial affidavit are $75 per week for food, $10 per week for clothing and $10 per week for automobile gas. Respondent testified that he does not own an automobile but rather drives his fathers' automobile. The petitioner introduced into evidence Department of Motor Vehicle records indicating that respondent owned two automobiles, one of which, a 1996 Suzuki Sidekick, was registered on May 24, 1998. Respondent testified that the Suzuki belonged to his daughter, (see State's Exhibit O).
13. Respondent testified that at one time his net worth was several million dollars and that his rental properties provided him with substantial income.
14. Respondent testified that he is currently married, that he lives separately from his wife and that his wife pays the rent and other expenses of maintaining her residence with the parties' two minor children. Respondent testified that he contributes no money to that household.
15. Respondent testified (and the tax returns reflect) that respondent has substantial gambling winnings and losses each year. He testified that he won lottery monies a few times in 1997. Respondent also confirmed an instance in 1994 wherein he won $15,000 in lottery monies. He testified that he lost the entire $15,000 during the course of a two day gambling spree in CT Page 10925 Atlantic City. This was the same year, 1994, that respondent had a bankruptcy petition pending (see State's Exhibit N).
16. Respondent testified that he was not gainfully employed from January 1994 through 1996. He testified that he cared for his parents during this period and that his parents paid for his living expenses including gas, repairs and insurance for the car that was owned by the father but driven by the respondent.
17. When questioned regarding his tax returns (see State's Exhibits B through M) respondent had no idea why there were medical expenses claimed in 1997 for $13,493 and in 1996 for $14,784. When questioned regarding rental property listed on said returns as having a basis of $313,000, respondent testified that he sold said property for $50,000. When questioned regarding substantial equipment listed on said returns, respondent testified that he simply "walked away" from all of it.
18. Respondent testified that he was qualified to seek employment as a cook, earning $400-$500 per week.
19. Portions of respondent's testimony have been cited in detail as partial explanation of why this Court finds the respondent's testimony, financial affidavit, and tax returns to be totally lacking in credibility. The Court will rely solely on Exhibit A, copies of weekly paychecks received in 1993, and Exhibit N, respondent's bankruptcy filing, as the only evidence of respondent's earning potential and find same to be $36,000-$38,000 per year net.
20. Petitioner testified that she has not worked outside the home since the parties' child was born in 1991, that her friend, Bernie, pays for the rent, utilities and groceries; that Bernie provides her with an automobile and pays for the gas, insurance and repairs for same; and that Bernie pays all expenses for herself and the minor child.
21. This Court will estimate her in-kind income and expenses paid in her behalf at $20,000 net per year.
22. Based on the foregoing and for the reasons set forth herein, the respondent is ordered to pay current child support in accordance with the Connecticut Child Support Guidelines in the amount of $152 per week. Respondent is ordered to maintain medical insurance for the benefit of the minor child if same is CT Page 10926 available to him through his place of employment, union or association at no cost or at reasonable cost. Respondent and petitioner are ordered to pay equally any unreimbursed medical expenses incurred for the necessary care of the minor child. C.G.S. Section 46b-84d is incorporated herein. Pursuant to statute and case law, the arrearage for past due child support owed by the respondent to the petitioner is calculated back to the date of birth of the minor child (June 20, 1991) and is calculated at the same earning potential. Therefore, the arrearage owed by the respondent to the petitioner is found to be $52,288 as of January 28, 1998, (i.e. $152 x 344 weeks). The respondent is ordered to pay $30 per week toward said arrearage. An immediate wage withholding is ordered in the total amount of $182 per week.
THE COURT
Susan S. Reynolds Family Support Magistrate